UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEFFIE PAVEY, SHAWNA MACDONALD, AND CHEYENNE COLEMAN,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>WEST BONNER COUNTY SCHOOL DISTRICT 83,<br><br>　　　　Defendant. | Case No. 1:23-cv-00349-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Steffie Pavey's Motion for Partial Summary Judgment. Dkt. 38. Pavey seeks summary judgment on three of her four claims: two under the Family Medical Leave Act ("FMLA"), and one under the Idaho Wage Claim Act. Defendant West Bonner County School District 83 (the "District") opposes the Motion. Dkt. 39.

The Court held oral argument on January 13, 2026, and took the matter under advisement. Upon review, and for the reasons outlined below, the Court GRANTS Pavey's Motion.

## II. BACKGROUND

Pavey began working for the District in February of 2019. After working as a math teacher for two years, Pavey transitioned to the District's Business Manager in July 2021.

For Pavey, like most classified employees in the District, her Employment Agreement with the District ended on the last day of each fiscal year (June 30th) and her new Employment Agreement began the following day (July 1st).

As a matter of course, most of the District's employees *did not* actually sign their new Employment Agreements prior to the expiration of their prior Employment Agreements. Because of summer break, employees typically signed their new Employment Agreement anywhere from a few weeks to a few months after the expiration of their prior Employment Agreement. The District treated the new Employment Agreement as applying retroactively so there was no lapse between Employment Agreements.

Pavey's 2022-2023 Employment Agreement ended on June 30, 2023. Pavey, however, continued working. She and Superintendent Branden Durst had multiple communications regarding District business and Durst assigned Pavey, as the District's Business Manager, multiple administrative tasks between July 1, 2023, and July 11, 2023. Dkt. 38-33 (compilation of work-related emails between Pavey and Durst). During this time, Durst and Pavey also communicated about her coming into the office to negotiate, finalize, and sign her new 2023-2024 Employment Agreement. The two eventually scheduled that meeting for July 14, 2023.

On July 11, 2023, Pavey emailed Durst that she intended to take FMLA leave for some personal medical issues. Durst responded as follows:

> You do not currently have a signed contract with the district, therefore you are not an employee of the district, therefore FMLA does not apply. It is my understanding that you have been working in the last 11 days since your contract expired. Since you have been doing that work without having a contract we will pay you as an independent contractor for that time. Please

**MEMORANDUM DECISION AND ORDER – 2**

invoice the district for any hours worked since July 1st at your hourly rate of $38.35.

Dkt. 38-11, at 2.

The District terminated Pavey shortly thereafter.

Two other Plaintiffs, Shawna MacDonald and Cheyenne Coleman, have been involved in this case. Their experiences mirror Pavey's in that each requested FMLA leave, each was told she was not an employee entitled to FMLA, and then each was terminated.

Plaintiffs Pavey and MacDonald originally filed suit on August 7, 2023, alleging a single cause of action for failure to pay minimum wage under the Fair Labor Standards Act. Dkt. 1. A week later, on August 15, 2023, Plaintiffs filed an Amended Complaint to add Coleman. Dkt. 3. On September 20, 2023, Plaintiffs filed a Second Amended Complaint separating out their individual allegations and adding two additional claims, both under the FMLA, for interference and retaliation. Dkt. 6. On April 17, 2024, Plaintiffs filed a Third Amended Complaint adding a fourth cause of action under the Idaho Wage Claim Act. Dkt. 22-1. The Third Amended Complaint is the operative Complaint.

The District subsequently settled with Coleman (Dkt. 24) and MacDonald (Dkt. 25).

Pavey has now moved for partial summary judgment on her Idaho Wage Claim and her FMLA claims. Dkt. 38. She asserts there are no material facts in dispute, and the Court can grant judgment in her favor on those causes of action. She also alleges liquidated damages are required.

The District opposes Pavey's Motion, asserting there are disputed facts precluding summary judgment.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation modified). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

#### A.  Count II – FMLA Interference

Under 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. In an FMLA interference claim, "[t]he issue is simply whether the employer

provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citation modified).

"The statute and the accompanying regulations protect an employee from any employer actions that discourage or interfere with the right to take FMLA leave." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003) (quoting 29 C.F.R. § 825.220(1)). *See also Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 955 (D. Idaho 2012) (FMLA interference is any "action that would be reasonably likely to deter employees from engaging in protected activity"). FMLA interference also includes "manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220.

To succeed on an FMLA interference claim, "the employee must establish that: (1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). For FMLA interference claims, "the employer's intent is irrelevant to a determination of liability." *Id.* Unlike FMLA retaliation, the McDonnell Douglas burden-shifting framework does not apply to FMLA interference claims. *See Xin Liu*, 347 F.3d at 1136.

Pavey claims only the third element—whether she was entitled to leave under the FMLA—is in dispute. That element, however, is closely tied to the first element: whether

MEMORANDUM DECISION AND ORDER – 5

she was eligible for the FMLA's protections in the first instance. The District's main objections focus on these inter-related concepts.[1]

Pavey argues the District has already admitted Pavey was eligible for the FMLA's protections thus satisfying the first element. In response to Pavey's Request for Admission 10, which reads: "Please admit that [] Pavey performed work as an employee of [the District] between July 1, 2023 and July 12, 2023" the District responded "Admitted." Dkt. 38-19, at 6. The Court agrees this is a strong indication that Pavey was an employee— albeit without an operative Employment Agreement—and was entitled to the FMLA's protections. The Court will return to the Employment Agreement shortly. But it strikes the Court as particularly odd that the District would admit Pavey was an employee and that she did work for the District but simultaneously claim she had no rights as an employee. These positions directly contradict one another.[2]

The District hinges its argument that Pavey was not entitled to the FMLA's protections on the fact that Pavey's Employment Agreement had ended, that she knew it had ended, and that the agreement itself outlined she had "no expectation of continued employment." Dkt. 39-1, at 4. Pavey does not dispute her Employment Agreement had

---

[1] The District admits it is a covered employer (second element) (Dkt. 39-19, at 8) and it has not contested that Pavey gave the District notice of her request (fourth element) or that the District denied her request (fifth element).

[2] At oral argument, the District admitted it historically had a course of performance with its employees that their Employment Agreements would be "backdated" to July 1 and that each was some type of employee or independent contractor during that time. But the District specifically asked the Court *not* to determine Pavey's (or any other employees') employment status as a matter of law, suggesting instead that this question should proceed to a jury. It also admitted repeatedly that the situation was likely confusing for many of the employees and could have been handled better. And when presented with hypotheticals, the District admitted its imprecise approach to the gap between employment agreements presented huge risks.

**MEMORANDUM DECISION AND ORDER – 6**

ended by the time she made her request for FMLA leave. Nor does she dispute the material terms of the agreement. But Pavey re-affirms that the District has already admitted she did work for them "as an employee." Dkt. 39-19, at 6. Furthermore, it is undisputed that Pavey worked 48 hours between July 1, 2023, and July 12, 2023—excluding the Fourth of July holiday.[3] Dkt. 38-2, at 10.

In addition to the District's written admission in this lawsuit that Pavey was an employee and worked after the expiration of her Employment Agreement, Durst readily admitted at his deposition that the Employment Agreements, once signed, were retroactive. Dkt. 38-9, at 14.[4] What's more, it was also Pavey's understanding, upon the advice of legal counsel, that a signed agreement was not necessary to continue working for the District in between school years. Dkt. 38-35, at 10.

It appears that, had Pavey *not* requested FMLA leave, she would have been given the opportunity to sign her 2023-2024 Employment Agreement. That agreement, ironically, would then have been retroactive (by Dunst's own admission) and covered Pavey under the FMLA. But since she requested FMLA and was then terminated, the very same protections disappeared. This does not make sense. That, coupled with the District's

---

[3] Notably, July 1, 2023, was a Saturday. Excluding the Fourth of July Holiday, there were seven business days between July 1 and July 12, 2023. The District opined at oral argument that Pavey might not have been doing her usual work during this time or that she was otherwise engaged in mundane tasks (suggesting maybe she was not really "employed" or was simply doing some extra work until her Employment Agreement was signed);  The Court does not know the entire substance of what Pavey was doing over the course of this time, but whatever it was, she worked 48 hours—essentially full time.

[4] At oral argument, the District tried to distance itself from Durst explaining there was litigation between Durst and the District and litigation from other employees based on things that happened during Durst's tenure. Regardless of those other situations, the District still cannot provide a coherent or rational explanation for why the Court should hold Pavey was not entitled to FMLA protections.

**MEMORANDUM DECISION AND ORDER – 7**

admission that Pavey *was* an employee who was *working* during this time detrimentally undercuts its argument that Pavey should not have been entitled to the protections and benefits of the FMLA. In short, the Employment Agreement was no longer in effect. However, the District's *actions* must be considered when evaluating whether Pavey was an employee entitled to protection.

The implement regulations (29 C.F.R. § 825.105(a)) make clear the definition of "employ" for purposes of the FMLA is taken from the Fair Labor Standards Act and means "to suffer or permit to work." 29 U.S.C. 203(g). The code explains this definition has a "broader" meaning that the "traditional common law concept of master and servant" and that "[m]ere knowledge by an employer of work done for the employer by another is sufficient to create the employment relationship under the Act." 29 C.F.R. § 825.105(a). In Idaho, "an employment contract is presumed to be at-will unless the parties . . . agree to a contract term limiting the right of either to terminate the contract at will." *Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 387 (Idaho 2005) (citation modified). The Idaho Supreme Court has held that "[i]n the absence of a written agreement, […] an employer may unilaterally change the employment agreement by uniformly providing reasonable notice of the change to its affected employees" and "the employees accept by continuing to work following receipt of such notice." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P.3d 1263, 1269 (Idaho 2012).[5]

---

[5] As already explained, Pavey's Employment Agreement included language that she had no expectation of continued employment. But up until July 12, 2023—when she was terminated—Pavey had that expectation based upon the District's actions. Also, the Court has not delved much into assumptions or assurances, but it should be noted that: 1) Pavey had gone through this same experience in prior years (of her contract not being signed and still working), and 2) numerous other employees had the same experience (in prior years

Prior to June 30, 2023, Pavey had an Employment Agreement stating her employment for the District was at-will employment. On July 1, 2023, Pavey continued as an at will employee—albeit without a formal Agreement—because the District did not inform Pavey she was terminated, she continued to show up to work, and the District continued to assign her tasks to perform as they had previously done. The District "permitted" Pavey to work as set forth under 29 C.F.R. § 825.105(a). This gave rise to an implicit agreement between Pavey and the District that Pavey's at-will employment would continue unless and until Pavey resigned or the District informed Pavey that she was terminated. Pavey was first told that she was no longer an employee on July 12, 2023, in response to her request for FMLA leave. For that reason, Pavey was an employee of the District until July 12, 2023.

The Court, therefore, concludes there is no dispute Pavey was an employee of the District and was entitled to the FMLA's protections when she asked for FMLA leave. By admitting that Pavey performed work as an employee after the termination of the Employment Agreement, the District has all but conceded as much. And the facts illustrate that, while Pavey's Employment Agreement itself had ended, she was still working for the District and should have been entitled to all benefits of said employment. Summary judgment is, therefore, appropriate on Pavey's FMLA interference claim.

///

---

*and* the year currently in dispute). The District's actions cannot be cast aside. Simply put, the District treated its employees as employees—with or without a contract—unless and until it terminated them. But it cannot hide behind a termination or lapse in contracts to restrict benefits the employees would have otherwise been entitled to.

MEMORANDUM DECISION AND ORDER – 9

### B. Count III – FMLA Retaliation

In addition to "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the [FMLA]," the "prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(a)-(c). Unlike an FMLA interference claim, however, "the employer's motive is an integral part of the analysis" of an FMLA retaliation claim because "retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citation modified).

The FMLA prohibits an employer from discharging an employee "for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). The Ninth Circuit has adopted the view that an employer may not take an employee's decision to take FMLA leave into consideration when making adverse employment decisions. *See Shelton v. Boeing Co.*, 702 F. App'x 567, 568 (9th Cir. 2017); *see also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (discussing the anti-retaliation provision in 29 U.S.C. § 2615(a)(2)). To establish an FMLA retaliation claim, an employee must show by a preponderance of the evidence: (1) that the employee engaged in an FMLA protected activity, (2) that the employee was thereafter subjected by her employer to an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005); *Bachelder*, 259 F.3d at 1125.

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the Defendant under the McDonnell-Douglas framework to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." *Douglas v. Dreamdealers USA, LLC*, 416 F. Supp. 3d 1063, 1075 (D. Nev. 2019) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004)). If the employer is able to meet its burden, the plaintiff must then show the Defendant's "given reason is pretextual" either: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Douglas*, 416 F. Supp. 3d at 1075 (*quoting Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)).

Somewhat surprisingly, the District gives this claim short shrift. It asserts it has "put forth substantial evidence that [Pavey] is unable to establish, at the very least, the third prong of her [retaliation claim]." Dkt. 39, at 7.[6] But then all the District says is that Pavey knew as early as July 7, 2023, and no later than July 10, 2023, that the District considered her employment to have ended on June 30, 2023. Even if that was the case—which the

---

[6] In so doing, the District has waived any objection to the first and second elements. Briefly though, as a matter of law, a "request for FMLA leave constitutes a protected activity under the statute." *Mamola v. Group Mfg. Services, Inc.*, 2010 WL 1433491, at *11 (D. Ariz. 2010); *see also* 26 U.S.C. § 2615; *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir.2001) (holding that the use of FMLA-protected leave as a negative factor in an employment decision is prohibited). Thus, the first element is met. Adverse employment action "include[s] lateral transfers, unfavorable job references, changes in work schedules, or any other action that would be reasonably likely to deter employees from engaging in protected activity." *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 955 (D. Idaho, 2012) (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000)); see also 29 C.F.R. § 825.220 (c). Pavey was subjected to an adverse employment action when Durst concluded Pavey was no longer a District employee in response to her FMLA leave request. Thus, the second element is also met.

Court does not find—such does not negate a potential link between Pavey's asking for FMLA leave and her termination.

To begin, it was not until July 12, 2023, *after* Pavey sent her email requesting FMLA leave on July 11, 2023, that Durst informed Pavey she was not an employee. Dkt. 38-11, at 2. Even then, the email does not indicate Pavey was terminated, only that she wasn't an employee and would need to be paid for her work as an independent contractor.[7] *Id*. It was not actually until July 14, 2023, that Durst informed Pavey she was "no longer an employee." Dkt. 38-12, at 2. And while the two may have been communicating prior to July 11, 2023, about Pavey's upcoming contract, there had been *no* discussions prior to July 11, 2023, that Pavey *was not* an employee of the Districts in the interim.[8]

Second, and more importantly, only those employees who requested FMLA leave were terminated and not given an opportunity to renew their contracts. Such an outcome is either highly coincidental or the result of retaliation against those seeking FMLA leave.

Durst testified in his deposition that his July 12, 2023 email where he first informed Pavey of her termination was "in direct response to her request for FMLA, informing her that it was not something she was eligible for because she didn't have a signed contract."

---

[7] The District has not taken the position in this litigation that Pavey was an independent contractor. Rather, as noted above, they have admitted she was an "employee." Dkt. 39-19, at 6. At oral argument, the District reiterated it was not claiming Pavey was an independent contractor, but it also stated it wasn't abandoning that argument altogether either.

[8] It appears the District is using Durst and Pavey's emails about finalizing her upcoming Employment Agreement for the proposition that Pavey "knew" she was not actually an employee at that time. Again, the facts do not support this conclusion. Pavey was working, Durst was assigning her tasks during, and she was otherwise engaged with District business. To say Pavey was not an employee or should have known she was not an employee is unreasonable.

**MEMORANDUM DECISION AND ORDER – 12**

Dkt. 38-9, at 14. There is some nuance here. Durst did not formally say Pavey was terminated; rather, he said she was no longer an employee. Thus, it is hard to distinguish between his email being retaliatory or informative. On the one hand, it appears Durst was simply telling Pavey she did not qualify for FMLA because she was not an employee. But on the other hand, the very nature of telling Pavey she was not an employee when, by all accounts, she thought she was—and the District has since admitted she was—suggests the sole reason for saying Pavey was not an employee was to preclude her from accessing benefits under the FMLA. And in any case, the District ultimately refused to renew Pavey's contract anyway, raising the strong inference that her relationship with the District ended *because* she sought FMLA leave.

Thus, the Court finds Pavey has met her initial burden of establishing a prima facia case for retaliation. The burden now shifts to the District to provide a non-discriminatory reason for its actions.

The District falls back on the idea that it was not discriminating against Pavey, only enforcing its contractual agreements. But the District puts forward no evidence as to why it declined to renew Pavey's contract specifically; it, therefore, fails to carry its burden of showing a legitimate, nondiscriminatory business reason it declined to renew her contract and terminated her at-will summer employment. Even assuming the District carried its burden of mounting a response, any reasonable jury would find that reason pre-textual because it is entirely inconsistent with the District's actual practices.

From 2020 through June 30, 2023, the District never reclassified any employee as an independent contractor because of a lapse between prior and subsequent Employment

MEMORANDUM DECISION AND ORDER – 13

Agreements. Dkt. 38-2, at 4–5. Between July and August of 2023, ten of the eleven classified employees in the District had a lapse between their Employment Agreements. Dkt. 38-2, at 7–8. Pavey (as well as MacDonald and Coleman) received emails from Durst telling them they were not entitled to FMLA leave because they were no longer employed because of the lapse in agreements. But the District did not say anything like that to the other employees even though they too did not have a current signed contract. All ten of those employees who signed belated contracts were, by all accounts, treated as if there had been no lapses in their employment or their benefits.

Durst was asked in his deposition whether "any other employees, in July of 2023, [were] paid as independent contractors because they did not have a currently signed 2023-2024 employment agreement." Dkt. 38-9, at 14. He responded, "[a]ll employees who signed employment agreements had those agreements retroactive to the expiration of the prior agreement." *Id*. Thus, it appears those employees who did nothing during the lapse in agreements retained the benefits of the agreements retroactively once signed, but those who sought to rely on the agreements in the interim had them exhausted. This indicates a disparity in treatment, a retaliatory outcome, and suggests the District's "we were just enforcing the contract" argument was pretextual.

In sum, upon review, the Court finds Pavey has met her burden for summary judgment on this claim as well.

## C. Liquidated Damages

An employer is "liable for liquidated damages equal to the amount of actual damages and interest, unless it can prove that it undertook in good faith the conduct that

MEMORANDUM DECISION AND ORDER – 14

violated the Act and that it had 'reasonable grounds for believing that [its action] was not a violation' of the Act." *Bachelder*, 259 F.3d at 1130 (9th Cir. 2001) (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)); *see also Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1016 (9th Cir. 2010). "The FMLA is unambiguous that once it is determined that an employer violated the statute, liquidated damages will be awarded unless the employer proves both 'good faith' and 'reasonable grounds for believing that [its action] was not a violation' of the FMLA." *Traxler*, 596 F.3d at 1016. If an employer can establish good faith, it can avoid liquidated damages. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

The District did not assert any defense to liquidated damages in its Answer to the Third Amended Complaint. *See* Dkt. 31. It did not address this claim in summary judgment briefing. And it admitted at oral argument that it had waived any opportunity to object by not responding. For that reason alone, the Court finds liquidated damages are appropriate.

But even if the District had raised some objection, it cannot meet its burden to establish Durst "had an honest intention to ascertain and follow the dictates of the Act" and "reasonable grounds for believing that its conduct complied with the Act" when he terminated Pavey in response to Pavey's notification that she would be taking FMLA leave. *Local 246 Utility Workers Union of America v. Southern California Edison Co.*, 83 F.3d 292, 298 (9th Cir. 1996).

Durst has claimed he conferred with attorney, Chris Yorgason, before terminating Pavey. But the District has maintained in this litigation that those conversations are protected by attorney-client privilege and has not disclosed them. Thus, it is unknown what advice, if any, Yorgason provided Durst or if Durst followed Yorgason's advice.

MEMORANDUM DECISION AND ORDER – 15

Additionally, Durst testified that to understand the requirements of the FMLA with regards to Pavey, he: (1) "did a lot of [his] own independent research" which included reading "some case files on FMLA claims that had been made previously, specifically with people who aren't contracted employees, through Lexis-Nexis, for example"; (2) asked his wife questions about the FMLA and "[s]he would sometimes ask her former boss about those same questions," although his questions were "never specific about [the District] or any specific employee;" and he testified, "I may have asked a couple of other superintendents, too. I don't remember exactly who I might have asked those questions." Dkt. 38-9, at 21.

Durst has not provided enough information to establish a good faith defense, and the District has argued none. Accordingly, liquidated damages are appropriate.

### D. Count IV – Idaho Wage Claim

The Idaho Wage Claim Act requires that "upon termination of employment by either the employer or employee, the employer shall pay or make available at the usual place of payment all wages then due the employee by the earlier of the next regularly scheduled payday or within ten (10) days of such layoff or termination, weekends and holidays excluded." Idaho Code § 45-606. The term "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." Idaho Code § 45-601(7). "The definition of 'wage' includes any ascertainable unpaid commissions and bargained-for compensation." *Moore v. Omnicare, Inc.*, 118 P.3d 141, 151 (Idaho 2005); *see also Polk v. Larrabee*, 17 P.3d 247, 253 (Idaho 2000); *Neal v. Idaho Forest Indus., Inc.*, 691 P.2d 1296, 1298 (Idaho Ct.

MEMORANDUM DECISION AND ORDER – 16

App.1984). An employee who prevails on their claims under the Idaho Wage Claim Act is entitled to treble damages and attorneys' fees that are found "due and owing." Idaho Code § 45-615; *see also Savage v. Scandit Inc.*, 417 P.3d 234, 237 (Idaho, 2018). The amount that is "due and owing" at termination includes unpaid vacation or personal leave that the employee was entitled to receive pursuant any agreement with the employer. *Whitlock v. Haney Seed Co.*, 759 P.2d 919, 925 (Idaho Ct. App., 1988).

Again, the District did not address this claim in its brief and recognized at oral argument it had waived any opportunity to oppose the relief requested.

Besides waiving any argument on this matter, the District initially stated it did not know whether Pavey had received payment for the work she performed in July before her official termination. Dkt. 38-28, at 4–5. The District has not supplemented that response and presented no evidence or testimony in briefing or at oral argument to counter Pavey's assertion that she *has not* been paid for that time.[9] Pursuant to the District's Policy, an employee is to be paid out up to ten (10) days of accrued vacation time at termination and up to three (3) days per year of personal leave. At the time of Pavey's termination on July 12, 2023, Pavey had the maximum ten (10) days of Vacation leave and the maximum three (3) days of personal leave. Between July 1, 2023, and July 12, 2023, it is undisputed that Pavey worked 48 hours and was entitled to 8 hours of holiday pay for the Fourth of July. At the time of her termination, Pavey's hourly rate was $40.37. Dkt. 38-2, ¶53.

---

[9] The District's failure to rebut Pavey's summary of the amounts owing supports the Court's holding above as this is, essentially, another admission by the District that Pavey was an employee who deserved pay (including holiday pay).

MEMORANDUM DECISION AND ORDER – 17

Thus, it is undisputed Pavey was owed $2,260.72 for the 48 hours she worked and the 8 hours of holiday pay. Pavey was owed an additional $3,229.60 for 10 vacation days (80 hours) and $968.88 for 3 days (24 hours) of personal leave pay that she accrued.

To date, Pavey has not received any compensation from the District for the period in question. Had this been paid out in a timely manner as required by the Idaho Wage Claim Act, the District would have paid Pavey $6,459.20. Idaho Code § 45-606. With treble damages, the District now owes Pavey $19,377.60, plus costs and attorney fees—which Pavey timely demanded in a Notice of Tort Claim dated August 7, 2023.

Summary Judgment is appropriate on this claim as well.

## V. CONCLUSION

From a procedural standpoint, this case is somewhat unique. It is not often the plaintiff moves for summary judgment. Rarer still is the Court's granting of a plaintiff's motion for summary judgment. But the outcome in this case is clear. Pavey has met her burden. At the risk of being blunt, the evidence is squarely against the District. It has tried to highlight some "disputes" to avoid summary judgment. But those disputes are not "material." Even liberally construed, the District has not presented any logical, coherent, legal, or rational explanation for its actions towards Pavey. There is simply no genuine issue of fact for trial and summary judgment is appropriate on Pavey's FMLA interference and retaliation claims and her Idaho wage claim.

Having thus concluded, the question is where this case goes from here. Again, at the risk of stating the obvious, the Court would encourage the parties to meet and confer about a potential resolution of this matter. If the parties cannot reach agreement, the Court will

set the case for trial. Trial will be strictly about damages (and potentially Pavey's remaining claim for failure to pay minimum wage which was not addressed in summary judgment).

## VI. ORDER

1.  Pavey's Motion for Partial Summary Judgment (Dkt. 38) is GRANTED as outlined above.

DATED: March 25, 2026

David C. Nye
U.S. District Court Judge